# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

| | |
|---|---|
| GAYLA CLEAVER, *AS THE ADMINISTRATOR OF THE ESTATE OF MARK STEVEN CLEAVER*, | PLAINTIFF |
| v. | No. 3:21-cv-747-BJB-CHL |
| SOUTHERN HEALTH PARTNERS, INC., ET AL. | DEFENDANTS |

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

Mark Steven Cleaver began experiencing stroke-like symptoms while serving his sentence at Hardin County Detention Center. Allegedly, the prison had been unresponsive to his serious history of hypertension and high blood pressure—and was slow to respond when those conditions led to a medical emergency. Eventually, Cleaver was transferred to Hardin Memorial, a private hospital owned by Baptist Healthcare System, one of the defendants in this case. Medical professionals at Baptist conducted a CT scan, diagnosed Cleaver with a brain hemorrhage, and then airlifted him to another hospital where he died. Gayla Cleaver, administrator of Cleaver's estate, sued Baptist and other defendants under various theories of liability. Specifically, Cleaver sued Baptist for medical malpractice, cruel and unusual punishment under the Eighth Amendment, and wrongful death (although the targets of this last claim are unclear).

Baptist alone filed a motion to dismiss, asking the Court to reject Cleaver's first two theories for failure to state a claim and lack of subject-matter jurisdiction over the state-law claims. DN 13. The Court agrees that Cleaver failed to state a claim for medical malpractice or an Eighth Amendment violation against Baptist (which on these allegations is not a state actor), but disagrees that this Court lacks supplemental jurisdiction over the remaining claim against Baptist.

### I. Cleaver's Allegations

Mark Steven Cleaver was an inmate at the Hardin County Detention Center. Complaint (DN 1) ¶¶ 21–22. Cleaver alleges that jailers and employees of Southern Health Partners (a private company that provided medical care for inmates) failed to provide him with prescribed hypertension medication, monitor his blood pressure, or otherwise look after his serious pre-existing conditions. ¶¶ 1–2, 18–19, 23–27. On August 9, 2020, Cleaver became dizzy and "subsequently fell," but "[n]o medical

1

personnel were summoned to" evaluate him. ¶¶ 28–32. Instead, Cleaver was forced to "walk to [the prison's] medical sector with no assistance from … correctional facility" personnel. ¶ 32. By the time Cleaver arrived his face was droopy, grip weak, and speech slurred. ¶ 33. Medical staff took his blood pressure then transferred him to Hardin Memorial Hospital, which is owned by Baptist Healthcare System. ¶¶ 17, 34. There, unknown medical personnel performed a CT scan and concluded that Cleaver had a brain-stem hemorrhage. ¶ 34. So at Baptist's orders, an airlift transported Cleaver to the University of Louisville Hospital where he received "treatment for a hemorrhagic stroke until he passed away on or about August 24, 2020." ¶¶ 35–40.

Gayla Cleaver is the administrator of Mark Cleaver's Estate. On behalf of the Estate, she sued twenty different defendants related to the prison and the hospitals that cared for Cleaver. ¶¶ 6–17. Cleaver makes numerous claims. With regard to Baptist, Cleaver seems to allege wrongful death, medical malpractice, and an Eighth Amendment violation because Baptist's workers failed to appropriately assess, diagnose, and treat Cleaver. ¶¶ 18–19, 47–49, 53, 67. Baptist moved to dismiss the Eighth Amendment claim on the grounds that the hospital is not a state actor and that Cleaver failed to state a valid claim even if it were. Motion to Dismiss (DN 13-1) at 4–5. Baptist also moved to dismiss the medical-malpractice claim for a lack of supplemental jurisdiction, failure to state a claim, and because Cleaver failed to file a "certificate of merit" required under state law. *Id.* at 5–9. To the extent Cleaver has alleged Baptist is also liable under a wrongful-death theory, Baptist has not moved to dismiss that claim.

Cleaver's response is thin and murky: she argues that Baptist is a state actor because it provided care to an inmate and doesn't clearly respond to the other non-jurisdictional arguments. Cleaver Response (DN 18) at 5–8.

## II.   Analysis

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While courts must accept factual allegations as true, courts need not accept "legal conclusions." *Id.* A claim's legal requirements provide an important framework, but a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, the complaint must contain plausible factual allegations supporting each of a claim's "material elements." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quotation omitted).

### A. Cleaver fails to state a claim for medical malpractice

To establish medical-malpractice liability under Kentucky law, a plaintiff must "prove that the treatment given was below the degree of care and skill expected of a reasonably competent practitioner and that the negligence proximately caused injury or death." *Reams v. Stutler*, 642 S.W.2d 586, 588 (Ky. 1982). The care and skill of a reasonably competent practitioner is based on practitioners in "the same or similar circumstances," considering evidence such as "locality, availability of facilities, specialization or general practice, proximity of specialists and special facilities as well as other relevant considerations." *Blair v. Eblen*, 461 S.W.2d 370, 373 (Ky. 1970) (quotations omitted); *see also Lake Cumberland Reg'l Hosp., LLC v. Adams*, 536 S.W.3d 683, 695 (Ky. 2017). In addition, Kentucky requires a plaintiff to "file a certificate of merit with the complaint in the court in which the action is commenced." KRS § 411.167(1). Failure to do so is grounds for dismissal. *See Evans v. Baptist Health Madisonville*, --- S.W.3d ---, No. 2021-ca-0201, 2022 WL 815420, at *2–4 (Ky. Ct. App. Mar. 18, 2022); *Dumphord v. Gabriel*, No. 5:20-cv-461, 2021 WL 3572658, at *5–6 (E.D. Ky. Aug. 12, 2021). Cleaver's filings failed to state a claim and did not include the necessary certificate of merit. Cleaver does not contest either point, instead merely arguing that this Court has supplemental jurisdiction. Cleaver Response at 6–8.*

---

* Baptist argues that absent the federal claim against it, no supplemental jurisdiction exists over Cleaver's state-law claims. MTD at 6–7. Original jurisdiction exists here based on the federal constitutional claims lodged against several defendants: Cleaver maintains Eighth Amendment claims for allegedly failing to provide necessary medical care while he was incarcerated. Because original jurisdiction exists, the "default assumption is that the court will exercise supplemental jurisdiction over all related claims," meaning claims that "derive from a common nucleus of operative facts." *Blakely v. United States*, 276 F.3d 853, 861 (6th Cir. 2002) (quotation omitted).

Despite Baptist's contention, Cleaver's claims against it and the other defendants are "related" in the jurisdictional sense. The allegedly unconstitutional medical care in prison resulted, according to the Complaint, in the prison transferring him to Baptist. ¶ 34. Baptist provided a diagnosis and then transferred him to another hospital in Louisville, where he died from the same medical condition. ¶¶ 34–39. Baptist's conduct is sandwiched between the allegedly unconstitutional conduct of the prison and Cleaver's death in Louisville. So the medical-malpractice and wrongful-death claims against Baptist are tied up with the prison's conduct and the events that occurred after Cleaver left Baptist's care. *See Bravo v. Loor-Tuarez*, 727 F. App'x 572, 574, 577 (11th Cir. 2018) (plaintiff's state-law medical-malpractice claim "formed part of the same case or controversy" as his deliberate indifference claim). These claims involve the same medical condition and eventual harm, and no one has questioned the appropriateness of the Court's jurisdiction over the federal and related state claims based on these events. Questions of causation, injury, and damages all turn, at least in part, on the conduct of the other defendants before and after the involvement of Baptist, which identifies no good reason why Cleaver must litigate its state-law claims against Baptist

At most, Cleaver alleged that unnamed employees provided treatment which fell below "good and accepted medical standards" by "failing to appropriately assess and diagnosis" and then treat Cleaver. Compl. ¶¶ 19, 34, 53. The Complaint says nothing more, rendering this a pure (and therefore insufficient) legal conclusion. Cleaver failed to allege any facts about the standard of care applicable to Baptist or how the hospital might've deviated from that standard. *Reams*, 642 S.W.2d at 588. The most Cleaver alleges is that the prison sent him to a Baptist hospital with severe preexisting symptoms, hospital personnel ran some tests and made a diagnosis, and the hospital sent Cleaver by airlift to another hospital. ¶¶ 33–35. The Complaint leaves unclear how Baptist's actions could have proximately caused Cleaver any additional injury. ¶¶ 54–56. This alone would be sufficient to dismiss Cleaver's medical-malpractice claims. Cleaver's failure to file a certificate of merit provides a further and legally sufficient reason to dismiss the claim as well. So the Court must dismiss Cleaver's medical-malpractice claim against Baptist.

### B. Cleaver fails to state a constitutional claim against Baptist, which is not a state actor

For similar reasons, Cleaver failed to state an Eighth Amendment claim against Baptist. First, failure to provide adequate medical care is cruel and unusual punishment only when a state actor is "deliberately indifferent" to an objectively serious medical need. *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Deliberate indifference is a subjective test that requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). This is a high level of culpability, as "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Yet Cleaver did not even allege sufficient facts to plausibly claim that Baptist committed medical malpractice.

---

in a different forum. *See generally Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993) (discussing "the interests of judicial economy and the avoidance of multiplicity of litigation"). Based on the similarity of the factual issues necessary to the resolution of the state and federal claims, supplemental jurisdiction exists. *See, e.g., Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 460–61 (7th Cir. 2020) (no abuse of discretion in exercising supplemental jurisdiction over a related medical-malpractice claim even after dismissing all federal claims); *McRaven v. Sanders*, 577 F.3d 974, 984 (8th Cir. 2009) (deliberate-indifference claim justified supplemental jurisdiction over related medical-malpractice claims).

First, Cleaver's Eighth Amendment allegations contain no factual allegations and are purely conclusory. Compl. ¶¶ 47–49. And the sole factual allegations leveled against Baptist say only that its hospital staff performed some tests and then transferred Cleaver to another hospital. ¶¶ 33–35. At most, Cleaver generally alleges that all the hospitals failed to adequately assess, diagnosis, and treat Cleaver. ¶ 19. No allegations indicate who did what or how this injured Cleaver—much less that anyone at Baptist "disregard[ed] an excessive risk to [Cleaver's] health or safety." *Farmer*, 511 U.S. at 837; *see also Wright v. Taylor*, 79 F. App'x 829, 831 (6th Cir. 2003) (allegation of five-week delay in dental treatment was legally insufficient absent a further description of how the delay harmed the plaintiff). In any event, the Constitution doesn't impose vicarious liability, so it is hard to see how Baptist itself could have caused the alleged constitutional injury. *Iqbal*, 556 U.S. at 676–77, 683 (no "vicarious liability" under § 1983, so "each Government Official … is only liable for his or her own misconduct"); *Harvey v. Harvey*, 949 F.2d 1127, 1129–30 (11th Cir. 1992) (when private parties violate the Constitution, their employers are not subject to vicarious liability). Again, Cleaver does not contest any of this—at least not with any clarity regarding why Baptist's arguments and the analysis above might be incorrect. Response at 6.

Second, the Eighth Amendment constrains state actors, not private ones. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014). Cleaver alleges that Baptist is a completely private hospital company. Compl. ¶ 17. The Supreme Court has said, however, that a private entity may amount to a state actor if it satisfies any of three tests: the public-function test, the state-compulsion test, or the symbiotic-relationship or nexus test. *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019).

Cleaver cites only the public-function test, relying on *Carl v. Muskegon County* for the notion that Baptist performed a traditionally public function when it treated an inmate such as Cleaver. Response at 5–6 (citing 763 F.3d at 595). The narrow public-function test, however, "requires that the private [individual] exercise powers which are traditionally exclusively reserved to the state." *Carl*, 763 F.3d at 595 (quotation omitted). That said, private doctors contracted to care for inmates are often deemed state actors because "states must provide medical care to those in custody." *Id.* As a result, the Sixth Circuit has held that a private psychiatrist was a state actor because he contracted with the state to provide care to inmates within a prison. *Id.* at 596.

Extrapolating from this precedent, Cleaver posits that any time a private entity provides medical care for an inmate, it must be a state actor; otherwise the prison would have had to provide that care, meaning the private entity stepped into that public role. This is incorrect. In *Carl* and similar cases, the medical professionals specifically contracted to regularly supply care for inmates inside the

5

prison. *Id.*; *see also Johnson v. Karnes*, 398 F.3d 868, 876 (6th Cir. 2005) (focus on jail contracting with others to provide in-house medical care); *but see Conner v. Donnelly*, 42 F.3d 220, 225–26 (4th Cir. 1994) (because a prisoner cannot chose his own medical care, even an outside doctor performs a public function).

The prison transferred Cleaver to a public hospital that cared for him as it would any other patient. ¶¶ 33–35. No allegations indicate that Baptist had contracted with any state entity or that it treated Cleaver differently based on where he came from. Merely treating a prisoner "on equal terms with the general public" doesn't transform a private hospital into a state actor. *Caballero v. Shayna*, No. 18-cv-1627, 2019 WL 2491717, at *4 (E.D.N.Y. June 14, 2019) (a hospital regularly handling transferred prisoners without a contract wasn't a state actor) (quotation omitted); *see also Sandusky v. O'Keefe*, No. 17-11784, 2019 WL 3753835, at *7 (E.D. Mich. Aug. 8, 2019); *Ketola v. Clearwater*, No. 1:08-cv-31, 2008 WL 4820499, at *3 (W.D. Mich. Oct. 31, 2008). Indeed, in a nearly identical case, a court in this district ruled that Baptist was not a state actor just because it cared for an inmate: that fact alone cannot bestow a public role on a private hospital, because "the provision of medical services is not a power that has been exclusively reserved to the state." *Snow v. Kentucky State Reformatory*, No. 3:17-cv-p521, 2018 WL 4265228, at *4 (W.D. Ky. Sept. 6, 2018). To hold otherwise would make any hospital employee a state actor and thus liable under the Constitution because she happens (perhaps unwittingly) to care for a patient who happens to be an inmate. This would expand the narrow public-function test beyond recognition.

Cleaver's dearth of factual allegations regarding Baptist makes his Eighth Amendment claim implausible. The Complaint does not adequately claim that Baptist's employees treated Mark Cleaver with deliberate indifference or that Baptist is a state actor.

### III. Conclusion

The Court grants Baptist's Motion to Dismiss (DN 13) Cleaver's medical-malpractice and Eighth Amendment claims.

Benjamin Beaton, District Judge
United States District Court

May 17, 2022